■ VOORHEESVILLE ROD AND GUN CLUB, INC., Respondent, v E. W. TOMPKINS COMPANY, INC., Appellant.—Casey, J. ■

On January 16, 1986, plaintiff and defendant signed a standard preprinted contract by which defendant was to sell and plaintiff was to purchase a portion of defendant's real property consisting of 24.5 acres of undeveloped land located in the Village of Voorheesville, Albany County, for $38,000. The contract provided that the property would be conveyed by warranty deed subject to all standard covenants, conditions, restrictions, easements of record and zoning and environmental protection laws, other than those which would render title unmarketable. Subsequent to an exchange of letters by the attorneys for the parties, the closing date was arranged for August 1986. On August 23, 1986, plaintiff mailed defendant a copy of "The Village of Voorheesville Land Subdivision Regulations" and requested that defendant comply with the regulations. Defendant refused and demanded a closing on August 29, 1986, stating that if plaintiff refused to close, such refusal would be considered an anticipatory breach of contract and would result in its termination and the return of plaintiff's $5,000 deposit. When plaintiff failed to close, the deposit was returned and plaintiff was informed that the contract was canceled.

On September 4, 1986, plaintiff's counsel informed defendant that the cancellation was unacceptable and that plaintiff considered defendant's failure to obtain subdivision approval as rendering the title unmarketable. On September 6, 1986, plaintiff's counsel attempted to obtain the necessary subdivision approval, but the application was refused on the ground that only the owner of the real property or his authorized agent could apply. On September 12, 1986, plaintiff commenced this action for specific performance or, in the alternative, damages for breach of contract. After issue was joined, plaintiff moved for partial summary judgment for specific performance. Defendant cross-moved for summary judgment dismissing the complaint. Supreme Court granted plaintiff's motion and denied defendant's cross motion. Defendant has appealed.

Although the contract is silent as to the specific issue of "subdivision approval", it is uncontroverted that defendant was selling only a portion of its real property, which subjected the sale to the Land Subdivision Regulations of the Village of Voorheesville. Article III of the Regulations clearly and un-

equivocally requires approval "[w]henever any subdivision of land is proposed" and "before any contract for the sale of \* \* \* lots" is consummated. This requirement is unconditional, for even though development of the land is not then contemplated, the sale of a part of a larger parcel cannot occur without such approval *(see, Freundlich v Town Bd.,* 73 AD2d 684, *affd* 52 NY2d 921).

Generally, " 'where a person agrees to purchase real estate, which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same. He cannot thereafter be heard to object to taking the title because of such restrictions' " *(Pamerqua Realty Corp. v Dollar Serv. Corp.,* 93 AD2d 249, 251, quoting *Lincoln Trust Co. v Williams Bldg. Corp.,* 229 NY 313, 318). We believe, however, that the contract here provides an exception to this general rule. The requirement that defendant "convey the premises subject to \* \* \* zoning \* \* \* laws \* \* \* provided that this does not render the title to the premises unmarketable" imposed upon defendant the affirmative obligation of complying with any relevant zoning ordinance that would affect the marketability of title at the time of delivery of the deed, and gave plaintiff the right to demand that defendant clear up the matter with the appropriate village authorities or return its down payment *(see, Pamerqua Realty Corp. v Dollar Serv. Corp., supra,* at 251-252). "A marketable title has been defined as one that may be freely made the subject of resale \* \* \*. It is one which can be readily sold or mortgaged to a person of reasonable prudence, the test of the marketability of a title being whether there is an objection thereto such as would interfere with a sale or with the market value of the property" *(Regan v Lanze,* 40 NY2d 475, 481).

In our view, defendant's refusal to obtain subdivision approval so as to make the subject parcel a legal lot under the zoning law rendered the title unmarketable pursuant to this test, particularly since it appears that plaintiff would be "plagued by zoning problems" *(Pamerqua Realty Corp. v Dollar Serv. Corp., supra,* at 251). Accordingly, plaintiff had the right to demand either that defendant clear up the matter with the appropriate village authorities or return any moneys paid on account *(see, supra),* and plaintiff demanded that defendant seek subdivision approval. We find defendant's refusal unwarranted *(see, Smith v Browning,* 225 NY 358, 368). In these circumstances, defendant had a contractual obligation to convey marketable title and Supreme Court properly granted specific performance compelling it to do so

*(see, Green Point Sav. Bank v Litas Investing Co.,* 124 AD2d 555, 557, *lv dismissed* 70 NY2d 693).

We also note that the contract at issue contains a provision which states, "In the event SELLER is unable to convey title in accordance with the terms of this agreement, SELLER's sole liability will be to refund the amount paid on account of the purchase price and to pay the reasonable net cost of examining the title." It is our view that this provision is inapplicable since there has been no showing that defendant is unable to convey a legal lot under the applicable zoning laws as required by the agreement. Defendant's unwillingness to apply for the necessary subdivision approval is not the same as being unable to convey title in accordance with the terms of the agreement *(but see, Armstrong Props. v Glasso,* 141 AD2d 687).

Judgment affirmed, with costs. Mahoney, P. J., Kane, Casey, Levine and Harvey, JJ., concur. *[See,* 141 Misc 2d 38.]